UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
IKE CARTER, JR.,

                              Plaintiff,

                                         **REPORT AND**
                                         **RECOMMENDATION**
            -against-                            CV 22-5083 (JMA)(ARL)

PAYBACK REPO, INC., AMERICAN RECOVERY
SERVICES and SANTANDER
CONSUMER USA, N.A.,
                              Defendants.
-------------------------------------------------------------X

**LINDSAY, Magistrate Judge:**

Plaintiff Ike Carter, Jr. brings this action pursuant to the Fair Debt Collection Practices Act (the "FDCPA") seeking to recover for injuries he sustained in connection with efforts to repossess his car. Before the Court, on referral from District Judge Azrack, is the motion by defendants Payback Repo, Inc. ("Payback") and American Recovery Services ("ARS") (collectively, "Defendants") to compel arbitration. For the reasons set forth below, the undersigned respectfully recommends that the motion be denied.

## BACKGROUND

I. **Procedural History**

Plaintiff originally filed the complaint in this action against ARS, Payback and Santander Consumer USA ("Santander") on August 26, 2022. ECF No. 1. An Amended Complaint was filed on August 26, 2022. ECF No. 5. On October 4, 2022, Plaintiff voluntarily withdrew his claim against Santander. ECF No. 13. Following a conference before Judge Azrack on December 14, 2022, at which settlement was discussed and a briefing schedule set, Defendants ultimately moved to compel arbitration of this matter on February 15, 2023. ECF No. 18.

Plaintiff opposes the motion. ECF No. 19. By order dated June 13, 2023, Judge Azrack referred the motion to compel arbitration to the undersigned to issue a report and recommendation.

**II.     Factual Background**

Plaintiff Ike Carter, Jr. is a resident of West Hempstead, New York and is a "consumer" as defined by 15 U.S.C. §1692(a)(3). Am. Compl. ¶ 5. Defendant Payback, is a repossession company, with its principal place of business in Lynbrook, New York. *Id*. at ¶ 6. Payback is a "debt collector," as defined under the FDCPA under 15 U.S.C. § 1692a(6). *Id*. at ¶ 8. Defendant ARS, a wholly owned subsidiary of the Patrick K. Willis Company, Inc., is a corporation that specializes in nationwide recovery management, skip tracing and impound services on behalf of lenders and creditors, with its headquarters in Sacramento, California. *Id*. at ¶ 9. ARS is a "debt collector," as defined under the FDCPA under 15 U.S.C. § 1692a(6). *Id*. at ¶ 11. In the Amended Complaint, Plaintiff alleges that Santander contracted with ARS to repossess Plaintiff's vehicle following a default and ARS then contracted with Payback to do the same. *Id*. at ¶¶ 18-20.

Plaintiff owns a 2015 Toyota Corolla, which was financed with a loan through Santander. *Id*. at ¶ 14. The Santander loan is a 'debt' as defined by 15 U.S.C. § 1692a(5). *Id*. at ¶ 16. The loan agreement was executed in August 2014 between Plaintiff and Audi of Jacksonville (the "Agreement"). *See* Ex. A, Defendants' Mem.[1] The Agreement was assigned to Santander. *Id*., Ex. A at 5. The Agreement includes an Arbitration Provision that expressly provides as follows:

ARBITRATION PROVISION
PLEASE REVIEW – IMPORTANT – AFFECTS YOUR LEGAL RIGHTS

---

[1] On a motion to compel arbitration, courts "apply a standard similar to that applicable for a motion for summary judgment." *Meyer v. Uber Techs., Inc*., 868 F.3d 66, 74 (2d Cir. 2017) (internal quotation mark and citation omitted). Thus, the court "considers all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, and draws all reasonable inferences in favor of the non-moving party." *Nicosia v. Amazon.com, Inc*., 834 F.3d 220, 229 (2d Cir. 2016).

> 1. EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL.
> 2. IF A DISPUTE IS ARBITRATED, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST US INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS.
> 3. DISCOVERY AND RIGHTS TO APPEAL IN ARBITRATION ARE GENERALLY MORE LIMITED THAN IN A LAWSUIT, AND OTHER RIGHTS THAT YOU AND WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.
>
> Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action. If federal law provides that a claim or dispute is not subject to binding arbitration, this Arbitration Provision shall not apply to such claim or dispute.

*Id.*, Ex. A, at 5.  The Agreement also expressly provides that it shall be governed by the law of the state of our address shown above" in this case, Florida. *Id.*, Ex. A, at 1.

Sometime prior to October 20, 2021, the Plaintiff fell behind on his obligations to Santander. Am. Compl. ¶ 17. As a result, Santander contracted with ARS to repossess the Plaintiff's vehicle. *Id*. at ¶ 18. ARS in turn contracted with Payback to do the same. *Id*. at ¶ 19. At approximately 3:30 a.m. on October 20, 2021, Plaintiff was inside his vehicle in the parking lot of a McDonald's located on Peninsula Boulevard in Hempstead when Payback arrived to the scene, seeking to repossess his vehicle. *Id*. at ¶ 21. While in his vehicle, Plaintiff felt an impact as something hit his vehicle in the rear. *Id*. at ¶ 22. Plaintiff was then thrown forward as his vehicle was lifted up from the rear while he was still inside the vehicle, causing him to strike the inside of his vehicle with great force. *Id*. at ¶ 23. The police were called and Plaintiff was forced to exit the vehicle to allow Payback to proceed with the repossession. *Id*. at ¶ 24-29.

Plaintiff here has asserted two claims arising out of this conduct. Defendants Payback and ARS are charged with a violation of the FDCA, Count I, and all Defendants are charged with unlawful repossession under NY UCC Section 9-609, Count II.

## DISCUSSION

### I. Applicable Legal Standard

The Federal Arbitration Act (the "FAA") provides that "[a] written provision in . . . a contract . . . to settle by arbitration a controversy thereafter arising out of [the] contract . . . shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. This statutory provision "reflect[s] both a 'liberal federal policy favoring arbitration' and the 'fundamental principle that arbitration is a matter of contract.'" *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 346, 131 S. Ct. 1740, 179 L. Ed. 2d 742 (2011). "[T]his policy is founded on a desire to preserve the parties' ability to agree to arbitrate, rather than litigate, disputes." *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 118 (2d Cir. 2012). But the FAA "does not require parties to arbitrate when they have not agreed to do so." *Id.* (quoting *Volt Information Sciences v. Board of Trustees*, 489 U.S. 468, 478, 109 S. Ct. 1248, 103 L. Ed. 2d 488 (1989)).

Thus, "[w]hen resolving a motion to compel arbitration, a court must first determine whether there is a valid agreement to arbitrate between the parties." *Mineola Garden City Co., Ltd. Bank of Am.*, No. 13–CV–05615, 2014 WL 2930467, at *2 (E.D.N.Y. June 26, 2014) (citing 9 U.S.C. § 4); *see also Zachman v. Hudson Valley Fed. Credit Union*, 49 F.4th 95, 101 (2d Cir. 2022) ("[t]he district court must first determine whether an agreement to arbitrate exists between the parties"). "The preliminary inquiry of whether the Arbitration Agreement is valid and enforceable is a matter for the Court to decide." *Kassim v. CVS Albany, LLC*, No. 21-CV-2927, 2022 U.S. Dist. LEXIS 169730, at *7, 2022 WL 4357456, (E.D.N.Y. Sept. 20, 2022).

4

Once that is determined, "questions of arbitrability, that is 'whether the parties are bound by a given arbitration clause' and 'whether an arbitration clause in a concededly binding contract applies to a particular type of controversy' can be delegated to the arbitrator if the parties clearly and unmistakably express their intent to do so. *Id*. (quoting *Kai Peng v. Uber Techs., Inc.*, 237 F. Supp. 3d 36, 45 (E.D.N.Y. 2017)).

"Courts deciding motions to compel arbitration 'apply a 'standard similar to that applicable for a motion for summary judgment.'" *Zachman,* 49 F.4th at 101 (citing *Nicosia,* 834 F.3d at 229). Specifically, "'[i]f the undisputed facts in the record require the matter of arbitrability to be decided against one side or the other as a matter of law, [the Court] may rule on the basis of that legal issue and avoid the need for further court proceedings.'" *Id.* (citing *Meyer v. Uber Techs., Inc.,* 868 F.3d 66, 74 (2d Cir. 2017)). "If, however, there is an issue of fact as to the making of the agreement for arbitration, . . . a trial is necessary." *Id.* at 101.

As noted above, "[t]he threshold question in any arbitration dispute is 'whether an arbitration agreement exists at all.'" *Gonzalez v. Cheesecake Factory Restaurants, Inc.,* No. 21CV5017PKCSIL, 2023 WL 2477697, at *1 (E.D.N.Y. Mar. 13, 2023) (citing *Abdullayeva v. Attending Homecare Servs. LLC*, 928 F.3d 218, 223 (2d Cir. 2019)). "Whether the parties agreed to arbitrate . . . is determined by state law." *Biggs v. Midland Credit Mgmt. Inc*., No. 17 Civ. 340 (TB) (ARL), 2018 U.S. Dist. LEXIS 41146, 2018 WL 1225539, at *5 (E.D.N.Y. Mar. 9, 2018) (citing *Bell v. Cendant Corp*., 293 F.3d 563, 566 (2d Cir. 2002)). Pursuant to the agreement's choice-of-law provision, Florida law governs the agreement in this action and any disputes between the parties. *See* Def. Mem., Ex. A at 1; *see also Wojcik v. Midland Funding, LLC*, No. 18 CV 3628 (MKB)(RML), 2019 U.S. Dist. LEXIS 93549, at *6 n.1 (E.D.N.Y. June 3, 2019). Plaintiff does not dispute that the Agreement he signed contained a valid agreement to arbitrate,

5

however, Plaintiff challenges whether Defendants, as non-signatories to the Agreement can compel arbitration.

## II. Analysis

Defendants have moved to compel the arbitration of Plaintiff's claims against them. Defendants argue that the threshold issue of arbitrability must be determined by the arbitrator. Def. Mem. at 6. The Court disagrees. As discussed above, the first step in the court's analysis is to determine whether a valid and enforceable arbitration agreement exists between the parties. Plainly, "[w]hether an entity is a party to the arbitration agreement also is included within the broader issue of whether the parties agreed to arbitrate." *Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l*, 198 F.3d 88, 95 (2d Cir. 1999); *see also Republic of Iraq v. BNP Paribas USA*, 472 F. Appx 11, 14 n.1 (2d Cir. 2012). Thus, the Court begins its analysis by examining whether the parties to the Agreements intended to provide Defendants with the right to invoke arbitration. *See Republic of Iraq*, 472 F. Appx at 14. Defendants acknowledge that there is no specific arbitration agreement between Plaintiff and Defendants but rather argue that the arbitration provision contained in the Agreement between Plaintiff and Audi of Jacksonville, which was assigned to Santander, also requires Plaintiff to arbitrate his disputes against them. *See* Def. Mem. at 8. Plaintiff disagrees. Pl. Mem. at 4-9.

"The Supreme Court has instructed that state law governs whether a non-signatory may enforce an arbitration clause." *Doe v. Trump Corp*., 6 F.4th 400, 412 n.8 (2d Cir. 2021) (citing *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630-31, 129 S. Ct. 1896, 173 L. Ed. 2d 832 (2009)); *see also Ohanian v. Apple Inc.,* 20 Civ. 5162 (LGS), 2021 U.S. Dist. LEXIS 43852, at *16, 2021 WL 871501 (S.D.N.Y. Mar. 9, 2021) ("While the federal policy favoring arbitration 'requires courts to enforce the bargain of the parties to arbitrate,' it 'cannot possibly require the

6

disregard of state law permitting arbitration by . . . nonparties to the written arbitration agreement.'") (quoting *KPMG LLP v. Cocchi*, 565 U.S. 18, 21, 132 S. Ct. 23, 181 L. Ed. 2d 323 (2011)).  The choice of law provision in the Agreement specifies that it shall be governed by the law of the state of our address shown above" in this case, Florida.  Def. Mem., Ex. A, at 1.  "Applying Florida law, courts consistently state that, '[o]rdinarily, a party cannot compel arbitration under an arbitration agreement to which it was not a party,' *Beck Auto Sales, Inc. v. Asbury Jax Ford, LLC*, 249 So. 3d 765, 768 (Fla. Dist. Ct. App. 2018), subject to certain exceptions, including equitable estoppel." *Ohanian,* 2021 U.S. Dist. LEXIS 43852, at *16, 2021 WL 871501; *see also Marcus v. Fla. Bagels, LLC*, 112 So. 3d 631, 633 (Fla. Dist. Ct. App. 2013) ("An obligation to arbitrate is based on consent, and for this reason a non-signatory to a contract containing an arbitration agreement ordinarily cannot compel a signatory to submit to arbitration").

Defendants here argue that under principle of estoppel, Plaintiff should be required to proceed to arbitration.  Def. Reply Mem. at 5.  Under Florida law, equitable estoppel may require a signatory to an arbitration agreement to arbitrate claims against a non-signatory in two circumstances – when the signatory relies upon the agreement in asserting his claims or where the claims allege "substantially interdependent and concerted misconduct" by the signatory and the non-signatory. *See Kroma Makeup EU, LLC v. Boldface Licensing + Branding, Inc.*, 845 F.3d 1351, 1354 (11th Cir. 2017) (applying Florida law).  Neither of those circumstances are present here.

First, it is "essential . . . that the subject matter of the dispute [be] intertwined with the contract providing for arbitration." *Sokol Holdings, Inc. v. BMB Munai, Inc.,* 542 F.3d 354, 361 (2d Cir. 2008); *see also MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999)

7

("equitable estoppel applies when the signatory to a written agreement containing an arbitration clause 'must rely on the terms of the written agreement in asserting [his] claims' against the nonsignatory") (quoting *Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc.*, 10 F.3d 753, 757 (11th Cir. 1993))), abrogated on other grounds, *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630-31, 129 S. Ct. 1896, 173 L. Ed. 2d 832 (2009).  Under Florida law, Plaintiff's FDCPA claims are not dependent upon the Agreement.  In *Verizon Wireless Personal Commc'ns, LP v. Bateman*, 264 So.3d 345, 351-52 (Fla. 2d Dist. Ct. App. 2019) the court held that the plaintiff's statutory claims under the Florida Consumer Collection Practices Act arose from Verizon's debt collection practices and were not related to the consumer agreement which contained the arbitration provision entered into between the parties when the appellant obtained cell phone service from Verizon.  *See also In re Bateman*, No. 8:14-BK-5369-RCT, 2019 U.S. Dist. LEXIS 163020, 2019 WL 4644385, at *1 (M.D. Fla. Sept. 24, 2019) (refusing to compel arbitration of Plaintiff's claim seeking an injunction related to Verizon's debt collection activities); *Mims v. Glob. Credit & Collection Corp.*, 803 F. Supp. 2d 1349, 1358 (S.D. Fla. 2011) (stating that the claims were not intertwined with the Agreement where "the claims presume[d] the existence of the Agreement . . . purely  for the purpose of noting there [was] an underlying debt").  Courts within the Second Circuit have similarly refused to apply the principle of equitable estoppel to allow a non-signatory to compel arbitration in cases asserting claims under the FDCPA.  *See, e.g., Ferro v. Allied Interstate, LLC*, No. 19-CV-49, 2019 U.S. Dist. LEXIS 114499, 2019 WL 3021234, at * 2 (E.D.N.Y. July 10, 2019)(refusing to compel arbitration because "equitable estoppel applies only where the arbitration agreement 'form[s] the legal basis' for plaintiff's claims against the non-signatories; 'it is not enough that the contract is factually significant to plaintiff's claims or has a 'but-for' relationship with them.'")(quoting *Lenox MacLaren Surgical*

8

*Corp. v. Medtronic, Inc.*, 449 F. App'x 704, 709 (10th Cir. 2011)); *Wojcik v. Midland Credit Mgmt., Inc.,* No. 18-CV-3628 (MKB) (RML), 2019 U.S. Dist. LEXIS 126769, 2019 WL 3423567 (E.D.N.Y. July 30, 2019) (equitable estoppel did not entitle the debt collector defendants to compel arbitration because the plaintiff's claims were based on the FDCPA—not on underlying credit agreement with the creditor); *Madorskaya v. Frontline Asset Strategies, LLC*, No. 19-CV-895, 2021 U.S. Dist. LEXIS 164995, 2021 WL 3884177 (E.D.N.Y. Aug. 31, 2021) (denying motion to compel arbitration of FDCPA claims made by purported agent of assignee).

Next, Defendants argue that there is a clear, intertwined, relationship amongst Santander and Defendants requiring the enforcement of the arbitration agreement pursuant to the rules of estoppel. Def. Reply Mem. at 2. However, Defendants have failed to establish that Plaintiff's claims are "substantially interdependent and concerted misconduct" by the signatory and the non-signatory. The court in *Madorskaya*, held that the defendant there had "failed to establish" it was significantly connected with the signatory to the agreement. *Madorskaya*, 2021 U.S. Dist. LEXIS 164995, at *33, 2021 WL 3884177, (in evaluating an arbitration provision in a consumer credit contract, Court held that the credit card agreement "does not clearly show that at the time it was executed, the contracting parties intended to expressly benefit Defendant—[that is], a debt collector hired by an assignee."). Similarly, here, Defendants, ARS, an entity that contracted with Santander, an assignee under the Agreement, and Payback, an entity that contracted with ARS, have offered no evidence to establish their connection with Audi of Jacksonville – the signatory to the Agreement -- or even Santander, an assignee under the agreement. Defendants attempt to distinguish *Madorskaya,* by arguing that since *Madorskaya,* recognized there were circumstances in which a non-signatory could assert a third-party beneficiary claim, this court

9

should do so as well. However, just as in *Madorskaya,* "[t]he Agreement in this case, including the Arbitration Clause, does not clearly show that at the time it was executed, the contracting parties intended to expressly benefit Defendant—i.e., a debt collector hired by an assignee." *Id.*

Since Defendants, as non-signatories to the Agreement containing the arbitration provision, have failed to demonstrate they are entitled to the benefit of equitable estoppel under Florida law entitling them to compel arbitration the undersigned respectfully recommends Defendants' motion be denied.

## OBJECTIONS

A copy of this Report and Recommendation is being electronically served by the Court on the parties. Any objections to this Report and Recommendation must be filed with the Clerk of the Court with a courtesy copy to the undersigned within 14 days. Failure to file objections within this period waives the right to appeal the District Court's Order. See 28 U.S.C. § 636(b)(1); Fed R. Civ. P 72; *Mejia v. Roma Cleaning, Inc.*, No. 17-3446, 2018 U.S. App. LEXIS 28235, 2018 WL 4847199, at *1 (2d Cir. Oct. 5, 2018) ("Plaintiff has waived any objections to the Magistrate's finding" by failing to timely object); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.,* 596 F.3d 84, 92 (2d Cir. 2010); *Beverly v. Walker,* 118 F.3d 900, 902 (2d Cir. 1997).

Dated: Central Islip, New York
       August --, 2023

                                                          _____/s/_____
                                                          ARLENE R. LINDSAY